# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**BEATRIZ LAGUERRE-SAAVEDRA, et al.**

**Plaintiffs,**

**v.**

**EDITORIAL CULTURAL, INC., et al.,**

**Defendants.**

**CIVIL NO. 15-2436 (PAD)**

## OPINION AND ORDER

Delgado-Hernández, District Judge.

This case pits the heirs of renowned puertorican writer, teacher, critic, and columnist Enrique A. Laguerre, and playwright Roberto Ramos-Parea as plaintiffs against Editorial Cultural, Inc. in connection with two of Laguerre's well-known novels, **La Llamarada** and **La Resaca**. To that end, the "Corrected Second Amended Complaint" includes three causes of action: (i) Cancellation of Cultural's Copyright Registration of the works at issue (First Cause of Action); (ii) Accounting of Cultural's relevant transactions (Second Cause of Action); and (iii) Copyright infringement (Third Cause of Action) (Docket No. 65). Cultural denied liability and counterclaimed, asserting unjust enrichment and fraud (Docket No. 69 at pp. 13-16). Id. All parties moved for partial summary judgment (Docket Nos. 42 and 45). For the reasons explained below, plaintiffs' motion is DENIED and Cultural's motion is GRANTED in PART to dismiss Ramos-Perea's copyright infringement claim.

### I. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting, Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990)). A factual dispute is "genuine" if it could be resolved in favor of either party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986), and "material" if it potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

As to issues on which the nonmovant has the burden of proof, the movant need to no more than aver absence of evidence to support the nonmoving party's case. Celotex Corp., 477 U.S. at 325; Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995). All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought. Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013). Conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative will not suffice to ward off a properly supported motion for summary judgment. Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013).

Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require the court to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. Wells Real Estate v. Chardon/Hato Rey P'ship S. E., 615 F. 3d 45, 51 (1st Cir. 2001). Although each motion for summary judgment must be decided on its own merits, each motion need not be considered in a vacuum. Id. Where, as here, cross-motions for summary judgment are filed simultaneously, or nearly so, the court ordinarily should consider the two motions at the same time, applying the same standards to each motion. Id. Based

on these parameters, careful record review shows absence of genuine factual dispute as to the facts identified in the section that follows.

## II.    FACTUAL FINDINGS

1.  Enrique Laguerre is the author of **La Llamarada** and **La Resaca**. See, Docket No. 46, Plaintiffs' "Statement of Uncontested Material Facts in Support of Summary Judgment on the Third Cause of Action and Counterclaim" ("Plaintiffs' SUMF") at ¶ 1. He passed away on June 15, 2005. Plaintiffs' SUMF at ¶ 2; and Docket No. 43, Editorial Cultural, Inc.'s "Statement of Uncontested Material Facts in Support of Summary Judgment" ("Cultural's SUMF") at ¶ 4.

2.  **La Llamarada** was first published on July 31, 1935. Cultural's SUMF at ¶ 9. It did not contain a copyright notice (id.), but was registered in the U.S. Copyright Office on February 1, 1936. Cultural's SUMF at ¶ 6. There is no renewal or assignment of **La Llamarada** in that Office. Cultural's SUMF at ¶ 7.

3.  On April 29, 2003, Laguerre and "Producciones Teatro Caribeño Inc.," executed a "Copyright License Agreement." Cultural's SUMF at ¶ 11 and Docket No. 73 at ¶ 11. The Agreement granted authorization for the theatrical representation of the literary work **La Llamarada**. Cultural's SUMF at ¶ 12.[1]  In this way, Laguerre authorized Ramos-Perea as playwright, to prepare and sign a theatrical adaptation of **La Llamarada** for stage performance. Cultural's SUMF at ¶ 13.

4.  As to allocation of rights, Section Second (b) of the Agreement states that Ramos-Perea retained the moral rights of the theatrical adaptation for the theatrical representations authorized by Laguerre. Cultural's SUMF ¶ 14. Laguerre, in turn, retained the entire and exclusive

---

[1] Plaintiffs do not contest this statement and agree that the contract so states. They claim, however, that whether the Agreement had legal effect is not a factual assertion but a legal conclusion. See, Docket No. 73 at ¶ 12. The same clarification is made with respect to SUMF ¶¶ 12-20.

right to authorize printouts ("impresiones") of the theatrical adaptation of **La Llamarada**. Cultural's SUMF at ¶ 15. In 2003, Ramos-Perea created a theatrical adaptation of **La Llamarada**. Plaintiffs' SUMF at ¶ 4; Docket No. 51-1, Exh. J.[2]

5. On April 29, 2003, Laguerre – as the "owner of several literature works of his own creation, including **La Llamarada** – entered into an agreement authorizing Cultural to print up to 25,0000 copies of an edition of the novel and produce dramatic adaptations. Docket No. 49-3, Exh. G, "State and Agree" Section. Plaintiffs' SUMF at ¶ 10; Cultural's SUMF at ¶ 2; Docket No. 73 at ¶ 2.[3] In 2013, Cultural published Ramos-Perea's theatrical adaptation of **La Llamarada**. Plaintiffs' SUMF at ¶ 7.[4]

6. **La Resaca** was first published in 1949. Cultural's SUMF at ¶ 10. It stated: "Rights reserved according to the law." Id. But the work was not registered in the U.S. Copyright Office. Cultural's SUMF at ¶ 5.[5] On April 10, 2000, Laguerre signed a contract with Cultural, granting it the right to publish up to 25,000 copies of the commemorative edition of **La Resaca**, with yearly liquidation of 15% of the revenues.[6] Cultural's SUMF at ¶ 1 and Docket No. 73 "Plaintiff's Answer to to [sic] Defendant's Statement of Uncontested Facts" at ¶ 1.

---

[2] How this theatrical adaptation transformed or adapted **La Llamarada** is unclear from the summary judgment record.

[3] As with **La Resaca** (see, fn. 6), the parties do not explain if this version is different from the original version. The record suggests that Laguerre created a "revised and annotated version" of **La Llamarada** in 2004. Nevertheless, no explanation as to how this version is different from the original and/or the commemorative version has been provided.

[4] The adaptation was not submitted as part of the summary judgment record.

[5] Plaintiffs denied this SUMF claiming – in a conclusory way and without any legal authority or analysis – that defendant did not comply "with the requirements of the Rule [without indicating which rule they are referring to] insofar as the evidence presented constitutes inadmissible hearsay." (Docket No. 73 at ¶ 5). As such, the statement is deemed uncontested. See, Local Civ.R. 56(e); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones").

[6] The parties do not explain whether this "commemorative edition" is different from the original version published in 1949. The record suggests that Laguerre created a "revised and annotated version" of **La Resaca** in 2004. But no explanation as to how this version is different from the original and/or the commemorative version has been provided.

  7. On September 11, 2001, Laguerre and "Producciones Teatro Caribeño Inc.," entered into an agreement for the theatrical adaptation of the literary work **La Resaca**. Cultural's SUMF at ¶ 17. According to the agreement, Ramos-Perea, as playwright, was authorized to prepare and sign a theatrical adaptation of **La Resaca** for the stage performance under the following caption "Enrique Laguerre's *La Resaca*, theatrical version of Roberto Ramos Perea." Cultural's SUMF at ¶ 18. The agreement provided for a four (4) year term (to expire in 2005). Docket No. 47-2, Exh. B. On April 29, 2003, however, the term was extended until 2010. Id., Addendum.

  8. Section Second (b) of the agreement states that Ramos-Perea retained the moral rights of the theatrical adaptation for the theatrical representations authorized by Laguerre; but the latter retained the entire and exclusive right to authorize printouts of the adaptation. See, Docket No. 59-4. Other derivative works such as video, publishing, cinema, radio, etc. were held by Laguerre. Id. In 2001, Ramos-Perea created the theatrical adaptation of **La Resaca**. Plaintiffs' SUMF at ¶ 3.[7]

  9. On January 2, 2002, Laguerre – as "the owner of several literature works of his own creation, including the dramatic adaptation of his novel **La Resaca** – entered into an agreement authorizing Cultural to publish this adaptation, ". . . for seven consecutive years, to be counted as of the issuance of the first impression of said first edition," subject to the conditions established

---

[7] How this theatrical adaptation transformed or adapted **La Resaca** is unclear from the summary judgment record.

by the parties. Docket No. 50-1, Exh. H "State and Agree" Section.[8] In 2013, Cultural published Ramos-Perea's theatrical adaptation of **La Resaca**. Plaintiffs' SUMF at ¶ 8.[9]

10. On August 4, 2004, Laguerre signed a contract with Cultural, granting it the right to publish **La Llamarada** and **La Resaca** for sale to the Department of Education for seven (7) consecutive years from first publication. Cultural's SUMF at ¶ 3 and Docket No. 73 at ¶ 3. In 2010, Cultural submitted copyright registrations for the annotated versions of **La Llamarada** and **La Resaca** in which it stated that both novels were in the public domain. Plaintiffs' SUMF at ¶ 9. Plaintiffs have been unable to find renewal applications for the original versions of these works. Cultural's SUMF at ¶ 8.

### III. DISCUSSION

First, Cultural claims that summary judgment is appropriate as to the Second Cause of Action (Docket No. 42 at pp. 6-11). There, plaintiffs ask the court to compel Cultural to conduct an accounting of sales of **La Llamarada** and of **La Resaca** (Docket No. 65). They assert the contracts so require, and accordingly request that Cultural pay them all amounts contractually due for those sales. Id. at ¶¶ 23-24. Cultural counters that it owes the heirs nothing, for **La Llamarada** and **La Resaca** are in the public domain (Docket No. 42 at pp. 6-11). It maintains the heirs do not have a copyright over the works and, thus, are not entitled to any accounting here. Id. The heirs agree that the *original* versions of the **La Llamarada** y **La Resaca** are in the public domain. As

---

[8] The court reviewed the "Declaration Under Penalty of Perjury" of Francisco Vázquez López, president of Editorial Cultural, Inc. submitted at Docket No. 71, Exh. 1. Nonetheless, it will not consider Mr. Vázquez' legal interpretations of the agreements at issue or evidence extrinsic to written contracts that are clear and unambiguous. See, P.R. Laws Ann. tit. 31 § 3471(Article 1233 of the Civil Code) ("If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed...."). Under Puerto Rico law, an agreement is "clear" when it can "'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation....'" Catullo v. Metzner, 834 F.2d 1075, 1079 (1st Cir.1987) (quoting Heirs of Ramírez v. Superior Court, 81 P.R.R. 347, 351 (1959)); and Vulcan Tools of Puerto Rico v. Makita USA, Inc., 23 F.3d 564, 567 (1st Cir.1994)("[w]hen an agreement leaves no doubt as to the intent of the parties, a court should not look beyond the literal terms of the contract")).

[9] The content of this publication is not part of the summary judgment record.

such, no accounting would be due. But the heirs distinguish between the *original* versions of those works and the *revised* and annotated *versions* that Laguerre created in 2004.[10] And revised and annotated versions *may* be entitled to their own copyrights. See, 17 U.S.C. §§ 101, 103 and 106(2). Yet the parties did not submit for examination and failed to explain the difference between the original version, the commemorative edition, and the revised and annotated versions of the works. So how the asserted copyrights apply in this context to support and oppose the requested accounting is unclear.

Second, Cultural presses for summary judgment by challenging Ramos-Perea's copyright claim over the adaptations of **La Llamarada** and **La Resaca** (Docket No. 42). Ramos-Perea, in turn, contends that in 2013, Cultural offered for sale 10,000 copies of his theatrical adaptation of **La Llamarada** and 10,000 copies of **La Resaca**, without his authorization (Docket No. 45).[11] If Ramos-Perea had any right over printouts of adaptations, he would prevail in case of infringement. But the agreements authorizing him to prepare theatrical adaptations for stage performance grant him rights over the theatrical representations, not the right to authorize printouts of the adaptations, which corresponds to Laguerre. That being so, it was up to Laguerre, not Ramos-Perea, to authorize the sale of the theatrical adaptations.

Third, plaintiffs move for summary judgment on Cultural's Counterclaim (Docket No. 45). The counterclaim is premised on the theory that the contracts between Cultural and Laguerre are

---

[10] Cultural makes much ado of the fact that, during discovery, plaintiffs did not request any information regarding the sale of the revised and annotated version of the works. Without any further elaboration or legal authority in support, it invites the court to conclude that the allegations of the Corrected Second Amended Complaint and the circumstances surrounding discovery in this case confirm that plaintiffs are suing as the owners of the copyright over the original version of **La Llamarada** and **La Resaca**. Considering the Corrected Second Amended Complaint as a whole, however, the argument is not persuasive. The document refers to the "revised and annotated version" and the "commemorative edition" (Docket No. 65 at ¶¶ 6, 8, 9, 11, 12), rather than to the original version of the works.

[11] Because, in Ramos-Perea's view, this confirms that Cultural violated his copyright over the adaptations, he moved for summary judgment on this claim. As discussed above, however, it was up to Laguerre to authorize the sale of the theatrical adaptations. By extension, Ramos-Perea's summary judgment request must be denied.

null and void (Docket No. 69 at pp. 13-16).[12] Nonetheless, the question of whether the literary works at issue are entitled to copyright protection or consist of a re-publication of preexisting materials or works in the public domain is a question that the court cannot answer on the record before it. As noted earlier, the parties did not submit the different versions and editions of the works for examination, and never explained how each such version and edition fits within their legal theory in the context of this litigation.

### IV. CONCLUSION

In view of the foregoing, plaintiffs' motion for summary judgment is DENIED. Cultural's motion for summary judgment is GRANTED in PART to dismiss Ramos-Perea's copyright claim. An order for the parties to submit a Joint Proposed Pretrial Conference Report will follow.

**SO ORDERED**.

In San Juan, Puerto Rico, this 30th day of September, 2017.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge

---

[12] In particular, Cultural alleges that it printed adaptations of **La Llamarada** and **La Resaca** pursuant to publishing agreements with Laguerre; that those agreements were induced by error, false representations and fraud because the works were in the public domain when Laguerre signed the contracts; and on that premise, argues that Laguerre could not have negotiated away licenses in exchange for royalties, in effect inducing Cultural to pay him thousands of dollars (Docket No. 69 at pp. 13-16).