IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BEATRIZ LAGUERRE SAAVEDRA, et al.

Plaintiffs,

v.

EDITORIAL CULTURAL, INC.,

Defendant.

CIVIL NO.: 15-2436 (MEL)

**OPINION AND ORDER**

Pending before the court is Defendant Editorial Cultural, Inc.'s renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). ECF No. 180. In the pending motion, Defendant argues that judgment as a matter of law should be granted because Plaintiffs failed to prove that they were the owners of the right to publish Roberto Ramos Perea's theatrical adaptations of the novels La llamarada and La resaca by Enrique Laguerre. Id. at 2. Beatriz Laguerre Saavedra, Beatriz Alexia Álvarez Laguerre, Rafael Enrique Álvarez Laguerre, Gabriel Ortiz Laguerre, Fabián Antonio Charrón Álvarez, and Carla Victoria Charrón Álvarez (Plaintiffs) subsequently filed a response in opposition. ECF No. 181.

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

On October 5, 2015, Beatriz Laguerre Saavedra, Mr. Laguerre's daughter, and Mr. Ramos Perea, author of the theatrical adaptations of the novels La llamarda and La resaca, filed a complaint against Defendant. ECF No. 1. The third cause of action alleged copyright infringement of the theatrical adaptation of La llamarada. Id. at 4. Ms. Laguerre Saavedra and Mr. Ramos Perea pled that the right to publish the theatrical adaptation of La llamarada belonged to Mr. Ramos Perea. Id.

On November 25, 2015, Defendant moved to dismiss the complaint for failure to join indispensable parties, namely Mr. Laguerre's grandchildren and greatgrandchildren. ECF No. 9. On March 30, 2016, Ms. Laguerre Saavedra and Mr. Ramos Perea requested leave to file an amended complaint joining Mr. Laguerre's grandchildren and greatgrandchildren as plaintiffs. ECF No. 20. The court granted leave to amend the complaint and denied Defendant's motion to dismiss. ECF No. 23.

On August 18, 2016, the Plaintiffs requested leave to amend the complaint to add an allegation of copyright infringement of the theatrical adaptation of La resaca to the third cause of action. ECF No. 35. The court granted leave to amend the complaint on September 15, 2016. ECF No. 38. The second amended complaint was filed on October 11, 2016. ECF No. 65. In the third cause of action, the Plaintiffs pled that the right to publish the theatrical adaptations of La llamarada and La resaca belonged to Mr. Ramos Perea. Id. at 5.

On September 30, 2016, Defendant filed a motion for partial summary judgment, in which it argued that Mr. Ramos Perea did not own the right to publish the theatrical adaptations of La llamarada and La resaca. ECF No. 42. On September 30, 2017, U.S. District Judge Pedro Delgado granted in part and denied in part Defendant's motion for partial summary judgment, articulating, *inter alia*, the following reasoning:

> [Defendant] Cultural presses for summary judgment by challenging Ramos-Perea's copyright claim over the adaptations of La Llamarada and La Resaca. Ramos-Perea, in turn, contends that in 2013, Cultural offered for sale 10,000 copies of his theatrical adaptation of La Llamarada and 10,000 copies of La Resaca, without his authorization. If Ramos-Perea had any right over printouts of adaptations, he would prevail in case of infringement. But the agreements[1] authorizing him to prepare theatrical adaptations for stage performance grant him rights over the theatrical representations, not the right to authorize printouts of the adaptations, which corresponds to Laguerre. That being so, it was up to Laguerre, not Ramos-Perea, to authorize the sale of the theatrical adaptations.[2]

---

[1] The agreements alluded to in the court's order, ECF Nos. 47-1 and 47-2, are the same as Trial Exhibits 6 and 7.
[2] It thus appears that the interests of Mr. Ramos Perea and Mr. Laguerre's heirs with respect to the copyright infringement cause of action regarding the publication of the theatrical adaptations are at odds with each other.

ECF No. 84, at 7 (internal citations omitted).

On November 22, 2017, the case was referred to the undersigned for all further proceedings. ECF No. 88. On March 21, 2018, a pretrial and settlement conference was held, in which the court granted Plaintiffs' request for leave to amend the third cause of action to allege that neither Mr. Laguerre nor his heirs authorized Defendant's printing and sale of the theatrical adaptations of La llamarada and La resaca. ECF No. 124. During said pretrial conference, neither Plaintiffs nor Defendant raised the possibility that the contracts between Mr. Laguerre and Producciones Teatro Caribeño, Inc. (Teatro Caribeño) could have been null and void *ab initio*. ECF Nos. 86; 124. On April 2, 2018, the third amended complaint was filed. ECF No. 111.

A jury trial was held on February 4–6, 2019. ECF Nos. 175–177. At the close of Plaintiffs' case, Defendants made a Rule 50(a) motion, which the court held in abeyance. On February 6, 2019, the jury returned a verdict finding that Plaintiffs were the owners of the right to publish the theatrical adaptations of La llamarada and La resaca, and awarding damages in the amount of $266,350. ECF No. 179.

## II. LEGAL STANDARD

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, if a party has been fully heard on an issue during a jury trial, an opposing party may file a motion for judgment as a matter of law at any time before the case is submitted to the jury. González-Bermúdez v. Abbott Labs. PR Inc., 349 F. Supp. 3d 93 (D.P.R. 2018). Rule 50(b) provides that if the court does not grant the motion, a party may renew a motion for judgment as a matter of law no later than 28 days after the entry of judgment. Id. In ruling on the renewed motion, the court may allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law. Id.

A motion for judgment as a matter of law may be granted only when there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. Negron v. Rivera, 433 F. Supp. 2d 204, 212 (D.P.R. 2006). "Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Id. (quoting Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 168 (1st Cir. 2005)). In evaluating the evidence, the court "may not assess the credibility of witnesses, evaluate the weight of the evidence or resolve conflicts in testimony, but must view all facts and reasonable inferences therefrom in the light most favorable to the non-movant." Id. (quoting Davet v. Maccarone, 973 F.2d 22, 28 (1st Cir. 1992)).

### III. ANALYSIS

Before addressing Defendant's arguments in favor of judgment as a matter of law, the court must address an assumption that underlies the jury's verdict: that Mr. Ramos Perea transferred the right to publish the theatrical adaptations of La llamarada and La resaca to Mr. Laguerre.

The parties have stipulated that the theatrical adaptations of La resaca and La llamarada are derivative works of the original novels. ECF No. 124, at 1. The parties have also stipulated that the original novels La resaca and La llamarada were in the public domain at the time that the theatrical adaptations were published. Where a work has gone into the public domain, any individual is free to use the work in new way, such as, for example, making a derivative work. Warner Bros. Entm't v. X One X Prods., 644 F.3d 584, 596 (8th Cir. 2011). A derivative work may be copyrighted, but the right to protection belongs to the creator of the derivative work. Mulcahy v. Cheetah Learning LLC, 386 F.3d 849, 852 (8th Cir. 2004). Copyright ownership may be transferred, but such a transfer is not valid unless an instrument of conveyance, or a note or

4

memorandum, is in writing and signed by the owner of the rights conveyed or the owner's duly authorized agent. 17 U.S.C. § 204.

It is undisputed that the creator of the theatrical adaptations of La resaca and La llamarada was Mr. Ramos Perea. The written contract between Mr. Laguerre and Teatro Caribeño concerning the theatrical adaptation of La llamarada does not clarify whether there is any relationship between Teatro Caribeño and Mr. Ramos Perea, and no evidence to that effect was presented at trial. Trial Exhibit 6. The contract states that Mr. Laguerre "authorizes . . . [Mr. Ramos Perea] to prepare the adaptation . . . of the novel 'LA LLAMARADA.'" Id. at 2. It goes on to state that Mr. Ramos Perea "will conserve the moral rights of the adaptation authorized by [Mr. Laguerre] for the revival that [Teatro Caribeño] makes, without he nor [Mr. Ramos Perea] authorizing any impression whatsoever of his adaptation, which right will correspond entirely and exclusively to [Mr. Laguerre]." Id. The written contract between Mr. Laguerre and Teatro Caribeño concerning the theatrical adaptation of La resaca contains similar language to that of the contract concerning the theatrical adaptation of La llamarada. Trial Exhibit 7. The court did not preclude Defendant from arguing at trial that these contracts were null and void *ab initio* on grounds that they provided that Mr. Laguerre reserved the right to publish the theatrical adaptations, a right that did not belong to him in the first place because at the time the contracts were executed, the novels on which the theatrical adaptations were based were in the public domain and the author of the theatrical adaptations was Mr. Ramos Perea.[3] ECF No. 156. At trial, however, Defendant did not argue, and the verdict does not provide for a finding, that the contracts between Mr. Laguerre and Teatro Caribeño were null and void *ab initio*.[4] Id. Such a finding

---

[3] The opinion and order issued on September 30, 2017 was ruling not on whether the contracts were null and void *ab initio*, an argument not raised in Defendant's motion for partial summary judgment or in Plaintiffs' response in opposition, but rather on who retained what rights pursuant to the contracts' terms. ECF No. 156.
[4] The verdict form used by the jury was not objected to by any of the parties.

would have been inconsistent with the jury's determination that Plaintiffs were the owners of the right to publish the theatrical adaptations of La llamarada and La resaca. Thus, the jury must have construed the contracts as transferring the right to publish the theatrical adaptations of La llamarada and La resaca from Mr. Ramos Perea to Mr. Laguerre, rather than from Mr. Laguerre to Teatro Caribeño and Mr. Ramos Perea, despite some clauses that suggest a contrary reading of the same. Neither at trial nor in its written motion for judgment as a matter of law did Defendant argue that a reasonable jury could not have found that Mr. Ramos Perea transferred the right to publish the theatrical adaptations of La llamarada and La resaca to Mr. Laguerre. Therefore, the court will instead turn its attention to the two arguments Defendant makes in support of its contention that Plaintiffs failed to prove that they owned the right to publish the theatrical adaptations in July 2013, when the printing on which the third cause of action is based occurred.

First, Defendant argues that the contracts between Mr. Laguerre and Teatro Caribeño expired before July 2013. Specifically, the contract concerning the theatrical adaptation of La llamarada expired on April 29, 2013, and the contract concerning the theatrical adaptation of La resaca expired in 2010. Trial Exhibits 6–7. Second, Defendant argues that Plaintiffs failed to prove that Mr. Laguerre transferred the right to publish the theatrical adaptations of La llamarada and La resaca to them.

Turning to Defendant's first argument, nowhere in the second clause prior to the "Terms and Conditions" section of the contract for the theatrical adaptation of La llamarada does the contract include an expiration date. Trial Exhibit 6, at 2. This second clause explicitly states that the right to print the theatrical adaptation "will correspond entirely and exclusively to" Mr. Laguerre. By contrast, the third clause introducing the "Terms and Conditions" section of the contract states that Mr. Laguerre and Teatro Caribeño, not Mr. Ramos Perea, agreed that the

6

contract would be for a term of ten years.  Id.  The third clause goes on to state that the agreement for the *representation* of the theatrical adaptation of La llamarada is solely and exclusively within Puerto Rico, that in the event of the death or physical disability of the President of Teatro Caribeño, the right of *representation* of the theatrical adaptation would revert back to Mr. Laguerre, that remuneration is based on $200 *per function*, and that Mr. Laguerre must be informed of the selection of artistic personnel, including actors, directors, and technicians.  Id. at 3–4.  The contract for the theatrical adaptation of La resaca contains identical terms but for the expiration date.  Trial Exhibit 7, at 2–4.  The focus of the third clause on the theatrical representations lends support to Plaintiffs' argument that a reasonable jury could have found that the expiration terms in the contracts applied not to Mr. Laguerre's right to publish the theatrical adaptations of La llamarada and La resaca, but rather to Teatro Caribeño's (or Mr. Ramos Perea's) right to stage the theatrical adaptations.  Hence, Defendant's argument that the verdict should be overturned because the contracts between Mr. Laguerre and Teatro Caribeño expired is not persuasive.

Nevertheless, Defendant's second argument, that a reasonable jury could not have found that Mr. Laguerre transferred the right to publish the theatrical adaptations to Plaintiffs, carries the day for purposes of the Rule 50(b) motion.  Plaintiffs chose not to introduce Mr. Laguerre's will into evidence at trial.  None of Mr. Laguerre's heirs testified; the sole witness Plaintiffs called was the President of Defendant Editorial Cultural, Inc.  Furthermore, at no point during the trial did the court take judicial notice of the fact that Mr. Laguerre had a will which implicitly or explicitly, directly or indirectly, assigned the right to publish the theatrical adaptations of La llamarada and La resaca to them.  Further, Defendant did not stipulate that Mr. Laguerre had a will which assigned the right to publish the theatrical adaptations (or any other assets) to Plaintiffs.  Thus, to find that Mr. Laguerre transferred the right to publish the theatrical adaptations to Plaintiffs, the jury would

7

have had to make several assumptions unsupported by evidence. If the jurors assumed that Mr. Laguerre died intestate, they would also have had to assume that *all* the Plaintiffs (who include not only Mr. Laguerre's daughter, but also his grandchildren and great grandchildren) inherited the right to publish the theatrical adaptations. If the jurors assumed that Mr. Laguerre did not die intestate, they would have had to assume first, that Mr. Laguerre's will assigned, explicitly or implicitly, the right to publish the theatrical adaptations to Plaintiffs, without assigning said rights to a non-heir legatee, and second, that Mr. Laguerre's will assigned, explicitly or implicitly, the right to publish the theatrical adaptations to *all* the Plaintiffs.[5] 31 L.P.R.A. § 2091.

Plaintiffs raise three counter-arguments. First, Plaintiffs contend that it was uncontroverted that Mr. Laguerre's will assigned the right to publish the theatrical adaptations to them. A copy of Mr. Laguerre's will was attached to Ms. Laguerre Saavedra and Mr. Ramos Perea's response in opposition to Defendant's motion to dismiss. ECF Nos. 12; 18. Further, in its answer to the first amended complaint, Defendant admitted that Ms. Laguerre Saavedra and Mr. Laguerre's grandchildren and greatgrandchildren were Mr. Laguerre's heirs.[6] ECF No. 26. As discussed above, neither the will itself nor testimony about its contents was presented at trial. Thus, Plaintiffs in essence are requesting that the court expand its post-trial analysis to include evidence that was not introduced at trial.

"Under 17 U.S.C. § 501(b), only 'the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it.'" Motta v. Samuel Weiser, Inc., 768 F.2d 481, 483–

---

[5] Plaintiffs respond that this is simply a matter of proportion in how the payments would be distributed. However, if, for instance, the will had assigned zero percent of the publishing right to the theatrical adaptations to one of the Plaintiffs (that is, had one of the Plaintiffs been excluded), then that plaintiff would lack standing to sue.

[6] Defendant, however, did not admit that Mr. Laguerre's will assigned the right to publish the theatrical adaptations of La llamarada and La resaca to Plaintiffs. ECF No. 26.

84 (1st Cir. 1985) (quoting 17 U.S.C. § 501(b)). The First Circuit has stated that absent this showing, a plaintiff does not have standing to bring an action under the Copyright Act. Id. at 484. See also DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC, 870 F.3d 978, 982–83 (9th Cir. 2017) ("Section 501(b) of the Copyright Act of 1976 establishes who has standing to sue for infringement.").

In Cranpark, Inc. v. Rogers Grp., Inc., 821 F.3d 723, 734 (6th Cir. 2016), the Sixth Circuit held that when standing is truly controverted at trial, a judge will often be justified in refusing to hear new evidence on standing during post-trial briefing. "[W]here the plaintiff is on notice that his standing is at issue and he has a full and fair opportunity to make his case, a court is justified in considering only the evidence adduced at trial." Id.

In the case at hand, Plaintiffs were on notice that their standing was at issue for three reasons. First, in the joint proposed pretrial order, Defendant challenged Plaintiffs' ability to prove standing.[7] Defendant stated that "Plaintiffs will not be able to prove that they are the owners of the copyright of the theatrical adaptations of La Resaca and La Llamarada . . . . Plaintiffs have no evidence to establish their rights pursuant to Laguerre's and Editorial's written agreements. They lack the minimum evidence needed to establish their rights." ECF No. 130, at 7. Plaintiffs could have filed a motion to amend the joint proposed pretrial order to include evidence that Mr. Laguerre transferred the right to publish the theatrical adaptations of La llamarada and La resaca to them by means of his will or in some other fashion or manner. They chose not to do so.

---

[7] Standing under the Copyright Act is properly classified as an issue of statutory standing, rather than constitutional standing. Sarvis v. Polyvore, Inc., No. CV 12-12233-LTS, 2015 WL 5934759, at *13 (D. Mass. Aug. 24, 2015). Statutory standing, as opposed to constitutional standing, is waivable. Id. However, Defendant cannot be deemed to have waived its challenge. This is due to the fact that since at least the date that the joint proposed pretrial order was filed, May 21, 2018, which was approximately nine months before trial, Defendant has been challenging Plaintiffs' *ability to prove standing*. Defendant did not necessarily have to know that Plaintiffs did not plan to present either Mr. Laguerre's will or testimony about its contents at trial before the filing of the joint proposed pretrial order.

9

Second, at trial, defense counsel raised the issue of ownership in her opening statement. She again identified ownership as a controverted issue in her motion for judgment as a matter of law, her closing argument, and her renewed motion for judgment as a matter of law. Defense counsel did not wait to raise the issue of ownership until after the close of all the evidence. See Cranpark, 821 F.3d at 735 ("[Rogers Group, Inc.] could have identified standing as a controverted issue, giving Cranpark an opportunity to present evidence, either by making its Rule 50(a) motion at the close of Sabatine's testimony or at the close of plaintiff's case. Because [Rogers Group, Inc.] did not do so, and because the court immediately denied [Rogers Group, Inc.]'s Rule 50(a) motion at the close of evidence . . . Cranpark had neither an opportunity nor a reason to place the [asset purchase agreement] into evidence.").

Third, the verdict form asked the jurors whether they found, by a preponderance of the evidence, that Plaintiffs were the owners of the right to publish the theatrical adaptations of La llamarada and La resaca. ECF No. 179. Plaintiffs' contention that standing was uncontroverted implies that these questions were superfluous.

For these reasons, the court will limit its Rule 50(b) analysis to evidence that was presented at trial. As discussed above, Plaintiffs presented no evidence at trial that Mr. Laguerre, either before he passed away or afterwards, through his will, transferred the right to publish the theatrical adaptations of La llamarada and La resaca to them. Thus, no reasonable jury could have found that Mr. Laguerre transferred the right to publish the theatrical adaptations to Plaintiffs.[8]

Plaintiffs also argue that by granting leave to file an amended complaint joining Mr. Laguerre's grandchildren and greatgrandchildren as plaintiffs and denying Defendant's motion to dismiss for failure to join them, Judge Delgado implicitly found that all indispensable parties were

---

[8] Ironically, the President of Editorial Cultural, Inc. was the executor of Mr. Laguerre's will. ECF No. 18. However, Editorial Cultural, Inc. never stipulated to the existence and contents of Mr. Laguerre's will for trial purposes.

involved in the third cause of action.  This argument is not tenable because even after the first amended complaint was filed, the third cause of action had yet to be amended to add an allegation of copyright infringement of the theatrical adaptation of La resaca.  Further, the amendment sought to join the additional parties as plaintiffs to causes other than the third cause of action because the filing of the first amended complaint had no effect on the third cause of action, which continued to allege that the right to publish the theatrical adaptations of La llamarada and La resaca belonged to Mr. Ramos Perea.  ECF No. 22.  Thus, Judge Delgado's ruling applied to a different version of the third cause of action than that which went to trial.

Lastly, Plaintiffs argue that the jury received an instruction stating that the ownership of a copyright may be bequeathed by will or pass as personal property by the laws of intestate succession.  This has no bearing on the fact that the jury could not even have determined whether Mr. Laguerre died intestate, based on the evidence presented at trial.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for judgment as a matter of law (ECF No. 180) is GRANTED.  The jury's finding of liability and damages regarding the third cause of action of the third amended complaint is vacated and set aside.  Judgment as a matter of law shall be entered for Defendant as to the third cause of action.  The jury's verdict for Plaintiffs regarding the second cause of action of the counterclaim, however, remains.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of March, 2019.

s/Marcos E. López  
U.S. Magistrate Judge